UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex. rel.* CHRIS JONES, | ) ) ) | |
| Plaintiff, | ) ) | No. 00 C 4050 |
| v. | ) ) ) | Judge Kocoras |
| FISHER AND FISHER, ATTORNEYS<br>AT LAW, P.C., KENNETH H. FISHER<br>AND BARRY M. FISHER, | ) ) ) ) | |
| Defendants. | ) | |

FILED MAR 1 2 2004
Chief Judge Charles P. Kocoras
United States District Court

DOCKETED
MAR 1 7 2004

## SETTLEMENT AGREEMENT

### I. Parties

This Settlement Agreement and Release ("Agreement") is entered into among the United States of America, acting through the United States Attorney for the Northern District of Illinois; the relator, Chris Jones; and Kenneth H. Fisher, Barry M. Fisher and Fisher and Fisher P.C. (hereafter referred to collectively as "defendants"), acting through their respective attorneys. Collectively, all of the above will be referred to as "the Parties."

### II. Preamble

As a preamble to this Agreement, the Parties agree to the following:

1. Kenneth H. Fisher and Barry M. Fisher are the principals of Fisher and Fisher, P.C., a law firm, that submitted or caused to be submitted claims for payment to the United States. The relator, Chris Jones, filed the captioned *qui tam* lawsuit against defendants pursuant to the False Claims Act on July 5, 2000.

1



2. The United States contends that it has certain civil claims against defendants under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended, and the common law doctrines of mistake and unjust enrichment for engaging in the following conduct during the period July 5, 1994, to July 5, 2002 (hereinafter referred to as "the Covered Conduct"): Defendants asserted false charges in bills for legal services and reimbursement in connection with mortgages which were guaranteed and/or insured by the Veterans Administration or the Department of Housing and Urban Development, and caused the false charges to be presented to the government for payment. The defendants specifically deny all of these contentions.

3. The United States contends that as a result of these claims, defendants received payments to which they were not entitled.

4. To avoid the expense, burden, and uncertainty of litigation, the Parties have agreed to settle the matter as set forth below, and further have agreed that the execution of this Agreement does not constitute an admission of any wrongdoing or liability and does not constitute an admission of any issue of fact or law.

### III. Terms and Conditions

NOW THEREFORE, in consideration of the mutual promises, covenants and obligations set forth below, and for good and valuable consideration as stated herein, the Parties agree as follows:

5. Defendants agree to pay to the United States the total sum of six hundred and seventy-six thousand, eight hundred and fifty two dollars ($676,852.00) (hereinafter the "Settlement Amount"). The payment shall be made within ten (10) days of the effective date of this agreement, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office.

6. In addition to and at the same time as the payment described in paragraph 5, defendants agree to pay relator's counsel the amount of fifty-one thousand dollars ($51,000), representing the relator's reasonable attorney's fees, costs and expenses. This payment shall be made within ten (10) days of the effective date of this agreement in accordance with instructions to be provided by relator's counsel. If defendants fail to timely pay this amount, the relator shall be entitled to recover reasonable attorney fees incurred in enforcing this provision.

7. Subject to the exceptions in paragraph 9, below, in consideration of the obligations of defendants set forth in this Agreement, and conditioned upon defendants fulfilling their payment obligations consistent with the provisions set forth under paragraph 5, and subject to paragraphs 13 and 14 below (concerning bankruptcy proceedings commenced within 91 days of the effective date of this Agreement), the United States on behalf of itself, its officers, agents, and its agencies agrees to release and forever discharge defendants from any civil claim that the United States has or may have under the False Claims Act, 31 U.S.C. §§ 3729-3733, or the common law theories of payment by mistake, unjust enrichment, disgorgement, restitution, recoupment, constructive trust, breach of contract and fraud for the Covered Conduct. No other entities or individuals are released by this Paragraph.

8. In consideration of the obligations of defendants set forth in this Agreement and the obligations of the United States, and conditioned upon defendants' fulfillment of their obligations to make the payment required under paragraph 5, the relator, for himself, his heirs, his agents, his successors and his assigns, agrees to release and will be deemed to have released and forever discharged the defendants and the United States from any claims, as of the date of this Agreement, the relator has or may have, including but not limited to claims that arise under or relate to any of

3

the allegations in the captioned civil action and/or the Covered Conduct, including all claims pursuant to 31 U.S.C. § 3730 *et seq.*, and attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730(d).

9. Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope of this Agreement are any and all of the following:

a. Any civil, criminal or administrative claims arising under Title 26, United States Code (Internal Revenue Code), and related tax regulations.

b. Any criminal liability for any individuals or entities.

c. Any liability of defendants to the United States (or its agencies) for any conduct other than the Covered Conduct;

d. Any claims based upon such obligations as are created by this Agreement;

10. Pursuant to 31 U.S.C. § 3720(c)(2)(B), the relator asserts and agrees that the settlement of claims in this cause is fair, adequate and reasonable under all of the circumstances.

11. Defendants waive and will not assert any defenses that they may have to any criminal prosecution or administrative action, which defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause of the Eighth Amendment of the Constitution, this Settlement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue Laws, Title 26 of the United States Code.

12. Defendants fully and finally release the United States, its agencies, officers, agents and departments, and the relator and his successors, heirs, assigns and attorneys, from any claims, causes of action, adjustments, and set-offs of any kind (including attorneys fees, costs, and expenses of every kind and however denominated) which defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, and departments, and the relator and his successors, heirs, assigns and attorneys, related to the Covered Conduct and the United States' investigation and prosecution thereof.

13. Defendants expressly warrant that they have each reviewed their financial situation and that none of them is insolvent within the meaning of 11 U.S.C. § 547(b)(3) and 548(a)(1)(A)(ii)(I), and as defined by 11 U.S.C. § 1101(32), and none of the defendants will become insolvent following payments of the Settlement Amount hereunder. Further, the Parties expressly warrant that, in evaluating whether to execute this Agreement, the Parties (a) have intended that the mutual promises, covenants and obligations set forth herein constitute a contemporaneous exchange for new value within the meaning of 11 U.S.C. § 547(c)(1)(A), and (b) have concluded that these mutual promises, covenants and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended and do, in fact, represent a reasonably equivalent exchange of value which is not intended to hinder, delay, or defraud any entity to which defendants were or became indebted, on or after the date of this transfer, all within the meaning of 11 U.S.C. § 548(a)(1).

14. In the event any defendant commences, or a third party commences, within 91 days of the effective date of this Agreement, any case, proceeding, or other action (a) under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to have any order for

relief of a defendant's debts, or seeking to adjudicate a defendants as bankrupt or insolvent, or (b) seeking appointment of a receiver, trustee, custodian or other similar official for a defendant, or for all or any substantial part of a defendant's assets, defendants agree as follows:

    a.    Defendants' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and defendants will not argue or otherwise take the position in any such case, proceeding or action that: (i) defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) any of the defendants was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment of the Settlement Amount hereunder; or (iii) the mutual promises, covenants and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to defendants.

    b.    In the event that a defendant's obligations hereunder are avoided pursuant to 11 U.S.C. § 547, the United States, at its sole option, may rescind the releases in this Agreement, and bring any civil and/or administrative claim, action or proceeding against defendants for the claims that would otherwise be covered by the releases provided in paragraph 7, above. If the United States chooses to do so, defendants agree that (i) any such claims, actions or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case or proceeding described in the first clause of this paragraph, and that defendants will not argue or otherwise contend that the United States' claims, actions or proceedings are subject to an automatic stay; (ii) that defendants will not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any such civil or administrative claims, actions or proceedings which are brought by the United States within 180 calendar days of written notification to defendants that the releases herein have been rescinded

pursuant to this paragraph, except to the extent such defenses were available on December 1, 2003; and (iii) the United States has a valid claim for the Covered Conduct as authorized under the False Claims Act against defendants. The United States may pursue its claim, inter alia, in the case, action or proceeding referenced in the first clause of this paragraph, as well as in any other case, action, or proceeding.

c. Defendants acknowledge that their agreements in this paragraph are provided in exchange for valuable consideration provided in this Agreement.

15. This Agreement is intended to be for the sole benefit of the Parties and by this instrument the Parties do not release any claims against any other person or entity.

16. Unless otherwise agreed to in writing between or among any of the parties, each party to this Agreement, will bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17. This Agreement constitutes the complete agreement between the Parties that involves the United States, or any of its agencies. This Agreement may not be amended except by written consent of the Parties.

18. Should any action to enforce or interpret this Agreement, or to resolve any dispute hereunder be required, the Parties acknowledge the jurisdiction of the federal courts and agree that venue for any such action shall be in the United States District Court for the Northern District of Illinois.

19. Within thirty (30) days after the effective date of this Agreement, but no sooner than the date on which the Settlement Amount is received by the United States, the United States and

relator will notify the court that the parties stipulate and request that the complaint be dismissed with prejudice.

20. Conditioned on defendants' payment in full of the Settlement Amount, relator shall receive from the United States a payment amounting to one hundred sixty-nine thousand, two hundred and thirteen dollars ($169,213.00). The United States shall pay relator and relator's attorneys these amounts by wire transfer pursuant to relator's counsel's instructions as soon as practicable after receipt by the United States of the Settlement Amount. It is expressly understood and agreed that the United States in no way promises or guarantees nor is it liable to relator for the collection or payment of any funds pursuant to this Agreement or the payment of any relator's share except as provided herein for funds actually collected and received by the United States.

21. On receipt of the payments described in paragraph 20, above, relator will release and will be deemed to have released and forever discharged the United States and its officers, agents, and employees from any liability arising from the filing of the complaint as against defendants, including any claim pursuant to 31 U.S.C. § 3730(d) or § 3730(c)(5) and in full satisfaction and settlement of claims under this Agreement.

22. Defendants represent, warrant, and acknowledge that this Agreement is a public document, and defendants specifically waive any claim that this Agreement is subject to the Privacy Act of 1974, 5 U.S.C. § 552a.

23. The undersigned United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement. The undersigned individuals signing this Agreement on behalf of defendants and the relator represent and warrant that they are authorized to execute this Agreement on their behalf.

24. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25. This Agreement is effective on the date of signature of the last signatory to the Agreement.

26. This document can be signed in one or more counterparts, which together shall form one agreement.

**DEFENDANTS**

_____  2/27/04
KENNETH H. FISHER    Date

_____  2/27/04
BARRY M. FISHER     Date

Fisher+Fisher P.C.   2/27/04
_____
FISHER & FISHER, P.C.   Date

_____  3/1/04
DANIEL M. PURDOM    Date
Hinshaw and Culbertson
4343 Commerce Court, Suite 415
Lisle, Illinois 60532

9

**UNITED STATES OF AMERICA**

DATED: 3/12/2004

By: *[signature]*
PATRICK J. FITZGERALD
United States Attorney
By: *[signature]*
JONATHAN C. HAILE
Assistant United States Attorney
219 S. Dearborn Street
Chicago, Illinois 60604

**RELATOR CHRIS JONES**

Dated: 3/11/2004

By: *[signature]*
Thomas Beyer
Gencon Legal Services
80 S. LaGrange Road Suite 10
LaGrange IL 60525